We're ready for United States v. Campbell. This is 24-5086 and we'll hear from Mr. Lallman. Good morning, your honors. May it please the court, Justin Lallman for the appellant, Kaylin Marie Campbell. I'm going to aim to reserve two minutes of my time. The district court in this case erred in enhancing Ms. Campbell's sentence based on three state court convictions entered in violation of federal law ousting state court jurisdiction. While this court does not have a case that squarely addresses this precise issue, the governing Supreme Court precedent provides a clear answer, and I want to spend some time discussing that precedent and where this case fits within it. This case involves an application of a long-standing principle of American law that a judgment entered by a court lacking jurisdiction is void and may not be given effect in a future case. That principle predates our nation's constitution, stretching all the way back to English common law, and as we note in our briefs, that principle has over time undergone some limitations. In 1938 in Stoll v. Gottlieb, the Supreme Court said if you previously litigated a jurisdictional determination in an earlier case, that you cannot then collaterally attack it in a later case, that principles of res judicata there apply. Two years later in Chico County v. Baxter State Bank, the court said that if you had the opportunity to litigate the jurisdictional issue in the prior case and you didn't, then those same principles of res judicata and collateral estoppel can apply and bar you from challenging the judgment in a later case. But crucially, on the same day that Chico County was decided, the court also cited Cobb v. Speirstein, and in that case the court recognized that where a state court enters judgment in violation of a body of federal law preempting state court jurisdiction, that the judgment is void and may be challenged in a later case, whether the issue of jurisdiction was raised in the previous case or not, or whether it could have been. Later that same year in United States v. U.S. Fidelity and Guarantee Co., the court applied that same principle again. In that case, it was a state court judgment entered without jurisdiction in violation of a tribe's sovereign immunity. Counsel, I wanted to step back for a minute and make sure that I understood what the component parts were to your argument. So, is it fair to say that to prevail you have to show two things? One is that Custis would permit collateral attacks due to a lack of subject matter jurisdiction, and then two, that McGirt is retroactive. Do you agree that you have to show both? So, I agree with the first point. I think the second point, I don't know that that's the question the court has to reach. We're not, in this case, we're not talking about retroactive application. We're talking about whether or not this court is going to continue to give prospective effect to these judgments, which I think all sides in this case agree were entered without jurisdiction. And so, if you look at, if you look at Berget, it's, in that case, it was a jurisdiction that was, or a judgment that was void because of the Sixth Amendment. But in that case, the court is talking about that if we don't allow for challenges in the context of this sentencing, that allows for the deprivation to be committed anew, the rights to be denied anew. And so, that's the way that we are, we see this issue is that we're really talking here about what prospective effect we're giving to this judgment. My client is not at all trying to challenge or undo her prior sentences. She's already fully served those sentences. We're not asking for a habeas remedy where we would essentially be released from that sentence. This is all about what kind of prospective effect we're going to give to these judgments. So, is it your position then on that latter question about McGirt's retroactivity, if it's your position that that's not the question, then is it your view that our cases that have passed on whether McGirt is retroactive in the habeas context are relevant at all to our analysis here? I don't think they are. I think when you're asking for a habeas remedy, there are different procedural bars that apply in that case because you're trying to undo something in the past. You're trying to undo a sentence that you're dealing with now. In this case, we're just talking about what is the prospective effect of these judgments. And so, I do think that those cases don't bear on this issue. Can I make sure that I fully understand your argument? So, obviously, I think we're talking about the applicability or inapplicability of Hagen. And I had understood that Hagen, obviously the inverse of McGirt, is essentially saying that even if you, at least as applied here, even if you can collaterally attack these state court convictions, to the extent that you're saying, well, those were a void because the state court in each of those three instances lacked jurisdiction, that you should be able to rely on that voidness for purposes of federal sentencing now. And I thought that Hagen presented exactly, not the same, but the inverse argument that a challenge to a federal adjudication of guilt cannot be used to invalidate the effect of those prior federal convictions. So, assuming that we adopt your first argument under Custis, why wouldn't Hagen prevent you from prevailing on merits, even if those three state convictions are subject to collateral challenge? Sure. And I think this is where you have to really look at the dividing line between Chico County and Cobb, which are these two cases decided in the 1940s on the same day by the Supreme Court. But they're not dealing with criminal convictions. They're not dealing with criminal convictions, Your Honor, but the principles are the same. And so, you can find cases, in fact, Cooch from this criminal case, it cites back to Chico County, Magnin v. Terrell, another criminal case, Judge Hartson, his concurrence, cites to Cobb for the exact principle we're relying on here. And more broadly, the court's decision in Bigford and the court's decision again in Magnin v. Terrell, while they might not always mention these cases, they're relying back on the same kind of core principle that applies in the civil or criminal setting. But coming back to it, I think the dividing line is really illustrated by Chico County and by Cobb because they're both in the bankruptcy context. One involved a challenge to a federal bankruptcy judgment that was entered without jurisdiction, and the other one involved a challenge to a state court judgment that was entered in violation of exclusive federal bankruptcy jurisdiction. So, Chico County was the challenge to the federal judgment, and the court there said, nope, you cannot challenge this. You had the opportunity to raise it in a prior proceeding. But in Cobb, because it was a state court judgment interfering in an area where federal law preempted state court jurisdiction, the court in that case said that the collateral challenge could go forward, and that was the case whether the jurisdictional issue was raised in the previous case or not. And so, Cobb is the analog to the situation we're dealing with here with a state court judgment entered in violation of federal law. Cooch and Hagen, those fall on the Chico County side of the line. And I would just, going back to emphasize, Cobb is not the only decision that kind of takes this view. U.S. Supreme Court's decision later that same year in 1940, U.S. Fidelity recognized the same principle. And in that case, it was a state court judgment against, entered without jurisdiction against an Indian tribe, and that tribe didn't raise sovereign immunity in the state court proceeding. Later on, they went to go challenge the state court judgment, and the court said that that challenge could go forward because the state court entered judgment in violation of tribal sovereign immunity, which is a federal law doctrine. I do want to address some of the government's arguments about Custis. And I think it's important that we read Custis in the context in which the issue was raised to that court, and we also have to take into account the court's reasoning. After the Supreme Court decided Burgett versus Texas, a majority of circuits across the country interpreted that case as allowing a defendant in a federal criminal case to collaterally challenge his prior state convictions on any constitutional ground, jurisdictional or not. And that is, the Fourth Circuit disagreed with that. That was Custis's case. Custis took it up on appeal, and his whole argument was that Burgett should apply across the board for all constitutional violations. The government opposed that and said, no, the court should follow the traditional rule that's devised between merits or jurisdiction. And that's what the Supreme Court did. The Supreme Court said the Sixth Amendment right to counsel is a unique constitutional defect precisely because it rises to the level of a jurisdictional defect. And the jurisdictional rationale is running throughout that opinion. In the Supreme Court, this court has been clear that interpreting Supreme Court precedent, the court's reasoning is just as binding on lower federal courts as its precise holding. And so we cannot divorce the jurisdictional reasoning in Custis from the court's ultimate decision. Are you aware of any of any circuit decision that has understood Custis in the way that you advance here? No, Your Honor, I'm not aware of any case addressing this one way or the other. I know that the government cited a bunch of cases in its briefs where courts have, you know, continue to come back to Custis and say you can't use it to raise non-jurisdictional constitutional challenges. And I think they just kind of just say you can't use it for anything other than the Sixth Amendment right to counsel. I'm not aware of any other personal constitutional right that has been adjudged to be jurisdictional. But I'm not aware of any circuit cases one way or the other dealing with this precise question that we have here. So to endorse your argument, right, your argument proceeds under the guidelines. It's 4A1.2 under the commentary that says this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law. And recognized in law means already recognized in law, right? I mean, I'm trying to understand how we can endorse your reading of Custis as coming within what 4A1.2 permits. Your Honor, I believe recognized in law follows from the read. I mean, this case is just the natural progression of the reasoning in Cobb, U.S. Fidelity, and Custis and Berget. And so we're just applying that same principle of that a state court judgment entered in violation of federal law ousting state court jurisdiction is void and can be collateral attacked. We're just applying that same principle in this setting. And so I believe that language does allow us to bring this challenge in the same way that anybody bringing a challenge on a Sixth Amendment ground, which is a recognized jurisdictional ground. Can I follow up on this Custis issue? Sure. And so one question, when you say that you're not aware of any other cases, dealing with this, the obvious question is, well, what about our own opinion in Garcia? And I assume that you're going to say, well, Custis and Garcia don't involve the precise situation of a prior jurisdictional defect. But if you look at the language of Garcia, it certainly seems to clearly cover this situation, doesn't it? You know, applying Custis, we hold that with the exception of collateral attack based on the complete denial of counsel, a district court sentencing a defendant under 4A12 cannot consider a collateral attack on a prior conviction. So if we say, well, we're going to interpret our precedent based on the language that is used, aren't we bound to reject your Custis argument under Garcia? I don't think so, Your Honor, because I think you do have to read that. You have to read the court's decision and holding in light of the issue that was presented. And there was no argument about jurisdiction in that case. It's undisputed that the challenges that were raised in that case were non-jurisdictional challenges. And so to read the court's comments on that point as just extinguishing any sort of jurisdictional challenge, despite Custis' reasoning, I think is an overbroad reading of the decision. Okay. I don't want to spend all the time, but let me ask you one other question. So by memory, it may be wrong as Justice Gorsuch and McGirt, you know, credited the continued existence of procedural impediments and said, you know, this is not to say that, you know, we're opening the avenue under McGirt, you know, for the interim, you know, period of these 18 months or whatever. But under your argument, you know, when we're all dead and our grandchildren are having kids that are occupying the 10th ventees of Mr. Lowland saying, you know, back in the 21st century, we have this precedent that Judge Rossman, Murphy, and Bacharach created to say that there is no time limit, you know, your criminal history, you know, was 100 years ago, but that's fair game because, you know, that was in Tulsa. And that was, you know, that state court conviction was Nuland Boyd. Boyd talked about opening the floodgates, you know, when we talk about opening up criminal history enhancements for 812. This is a revolutionary argument that you're making, isn't it? Your Honor, to come back to the point you made at the beginning with Justice Gorsuch noting these procedural bars that apply, those, my argument is not against any of those. When we're talking about a retrospective remedy where you're trying to undo your sentence, a habeas remedy, those protections still apply. In that setting, you still have to bring the state officer who's holding you in custody before the court. You have to go through that process. There are procedural protections there. We're just talking about the prospective effects, whether we're going to continue to give prospective effects to a judgment that I think all sides... That may have happened 50 years ago, right? That's correct, but we're talking here in a case where we're dealing with a judgment that all sides acknowledge was entered without jurisdiction. And so the question is, it's just a perspective issue, is whether we're going to deny these rights anew to use Burgett's language. Okay. Doesn't your prospective effects argument depend on the retroactive application of McGirt? I don't think so, Your Honor, because retroactive application is tied in with the habeas statute, tied in with habeas relief, which again, when you're trying to undo a sentence, trying to undo some sort of relief that's retroactive, those principles come into play. But I think there is a certain divide here with this perspective versus retroactive. Judge Rossman, did you have any other questions? I don't. Thank you. Judge Murphy, did you? No, I don't. All right. Sorry to steal so much of your time, Mr. Littleman. Mr. Bryden. May it please the court. Stephen Bryden on behalf of the United States. And if I could, Your Honor, I'd like to start off where both Judges Packerak and Judge Rossman were just discussing with my friend on the other side. First, I'd like to point out that not just Justice Gorsuch in the majority opinion in McGirt, but also the primary dissent authored by Justice Roberts, which would be all nine justices signed on between the two, made a specific point to discuss these procedural obstacles that the state had for the purpose of McGirt that would likely keep these convictions from being found void in further situations in the state of Oklahoma. And that's important because if Mr. Littleman is correct on this argument, then all of that is superfluous. If the law is because these convictions were rendered without jurisdiction after the McGirt decision, that there was no reason to do a procedural analysis under Oklahoma law, then all of that was something that was unnecessary to add to the opinion. And that's generally not how we read Supreme Court opinions. And then also something that you touched on, Judge Packerak, about what this effect would be on the state of the law. Well, that's something that Cooch considered. It was a big part of why the Cooch case after the way it did, which is that basically retroactively saying none of these convictions count in the state of Utah after they redefined what was or wasn't Indian territory would result in an 18-year, they called ex post facto lawless zone, where these convictions just don't matter. Well, doing that in this case would create a 100-year ex post facto lawless zone because the state of Oklahoma for 100 years has been prosecuting criminal cases believing that it had jurisdiction. Cooch also, in its discussion of the equities, talks about the fact that when a defendant basically subjects themselves to the jurisdiction, they plead guilty, they accept responsibility for those offenses. Those are things that a court should consider as weighing against a need to retroactively eliminate those convictions. And that's the case here. Ms. Campbell pled guilty in all these cases. She did not assert any kind of jurisdictional defense, nor does she assert any kind of defense that there was something procedurally wrong that led to a deprivation of her rights other than the venue of prosecution in this case. And that's something that the Cooch court found was important. Another distinction I think is important to make is between the civil cases that Ms. Campbell relies on, specifically Cobb and Chico and the cases just discussed. It is important that there are cases involving civil judgments and not criminal convictions. This court in the Mayfield case in 1987 said about as clear as it can, the issue of whether a court has proper jurisdiction is a legal one, and hence no conviction is void from inception for lack of jurisdiction until a court with review authority has so declared. Whatever the law may be regarding the effect of civil judgments or default civil judgments, the law on how this court should treat criminal convictions is clear. They're void until reviewed by a court that's tasked with actually reviewing them. So in a 2255 situation or some other place where the court has the ability to question the conclusiveness of those convictions. I also reject the idea that there's a really strong- Can I test that? How far that goes? Let's say there was a fraud on the court that's not discovered until many years later. Let's say Mr. Campbell is challenging the use of one of the convictions that took place in state court, and he's not making a McGirt-type challenge, but he's saying, I have just learned that the lead investigator in that case has been convicted of fraud. We've seen high-profile cases involving forensic chemists and the like over the years. What if that had not been previously recognized and adjudicated as an invalidation of that prior conviction? Can someone come forward and say, well, there's been no prior recognition of the invalidity of that prior criminal conviction, but that's only because the court was the victim of fraud? No, they couldn't, Your Honor. Now, certainly in the case of conviction, they may have remedies under 2255 or some other statute, but part of the reasoning of Custis about what makes the complete deprivation of counsel so unique, it was two parts. One was how serious it is in terms of the defendant's ability to exercise any of the rest of their rights, but the second part was how clearly it can be proven on the face of the documents. Being able to tell if there's a complete deprivation of counsel is easy. There's either counsel entered or there's not. In your question, trying to determine whether there was actually a fraud on the court in that scenario would require significant testimony, likely expert testimony and things like that. Likewise, the issue here, again, is not as simple as simply looking at a document to determine whether these convictions from the state of Oklahoma are valid or not. This court over the last six to 12 months has had a number of cases about the level of proof and the difficulty of proof in showing Indian and non-Indian status. To actually adjudicate whether these convictions are valid, there'd have to be a proof of actual Indian status at the time of the offense. There would have to be proof that it occurred with an Indian country and that it fell into any kind of exception that fit into that situation. That second important reason in Custis that they separated Sixth Amendment complete deprivation for everything else doesn't apply to your hypothetical, nor does it apply to the situation here. Thanks. But in Custis, Custis said that the complete deprivation of the right to counsel is so significant because it rises to the level of a jurisdictional defect. And here we have literally the argument is a jurisdictional defect. So doesn't the logic of Custis here just compel us to endorse the appellant's argument? I mean, we don't have something that's like a jurisdictional problem. We have literally a jurisdictional problem. Your Honor, while I recognize that that is the quote from Custis, Custis also specifically says that the only exception that is considered is complete deprivation of counsel. And if what the Supreme Court meant was the only exceptions are complete deprivation of counsel or issues of subject matter jurisdiction, they easily could have said so. And to understand why they would say it rises to the level of jurisdictional defect, but that might not be justiciable in this situation is because of the second half of what's important about that concern. The court acknowledges when they were looking at, well, like how bad does the deprivation of counsel have to be? I mean, you could have such an ineffective counsel that they're not able to actually defend any of your rights. And so it would be practically the same as having no counsel at all, but practically the same as having no counsel at all does not let you file a a collateral attack under Custis because proving that would require a significant amount of proof where that new collateral court is having to review things that would be best reviewed by the original court. And it's the same with matters of jurisdiction here. If a district court were to sit on the validity of this conviction right now, not only would it have to discuss what I just talked with Judge Bachrach, would also have to walk through the procedural defenses that were discussed in McGirt about how Oklahoma's statutes would apply, how race judicata or lashes or equity, any of those things could apply on whether or not the conviction is void or not. I recognize that Ms. Campbell made an argument that the validity of the underlying conviction may not matter and that they're only arguing about a perspective use here. But as Judge Rossman discussed earlier, we're operating under a guidelines provision here. And the guidelines provision says to count convictions unless they've been rendered void by another court or whether if they've been given in complete deprivation of counsel. And so, essentially, they're asking for a remedy and equity that goes beyond what's allowed by the guidelines to say, yes, there are situations where my conviction might not be legally void, but it would be unfair to give it to me going forward. And that's just not what's contemplated by that guidelines provision and it's not what's contemplated by Custis. If the court has no further questions for me, I would ask that this court affirm the decision of the district court and I would yield the remainder of my time. Judge Rossman or Judge Murphy, do you have questions? I have none. Okay. Kevin, did I unintentionally cheat Mr. Lowen out of all his rebuttal time? Judge, he went two minutes over. In other words, yes. Sorry about that, Mr. Lowen. It's very well presented in any event by both sides. This matter will be submitted. Thank you. Thank you both.